**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PLASTICS INDUSTRY ASSOCIATION,<br>    1425 K Street NW, Suite 500<br>    Washington, D.C. 20005;<br><br>    *Plaintiff,*<br><br>v.<br><br>ROB BONTA, in his Official Capacity as<br>Attorney General of California<br>    1300 "I" Street,<br>    Sacramento, CA 95814-2919<br><br>    *Defendant.* | Case No.<br><br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW the Plaintiff, the Plastics Industry Association ("PLASTICS"), by and through its undersigned counsel, and brings this action against Defendant, Rob Bonta, in his official capacity as the Attorney General of the State of California, seeking this court's protection of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the U.S. Constitution and under the Civil Rights Act of 1866, 42 U.S.C. §§ 1983, 1988, and under Article I of the California Constitution.

## PRELIMINARY STATEMENT

1.      This lawsuit seeks this Court's intervention to stop the California Attorney General from abusing his authority and committing ongoing violations of PLASTICS' constitutional rights, including its First Amendment rights to petition and freedom of association.  Mr. Bonta is using his subpoena power to attempt to access privileged documents. Mr. Bonta is presently threatening to bring PLASTICS into California court, even though PLASTICS has no connections

1

with California and Mr. Bonta has no lawful authority to bring suit against PLASTICS in California. These actions are causing PLASTICS direct, immediate, and irreparable harm, including chilling its First Amendment rights, undermining PLASTICS' ability to engage in protected First Amendment activities, and interfering with PLASTICS' ability to communicate with its membership.

2.      On April 28, 2022, California Attorney General Bonta launched an investigation into the fossil fuel and petrochemical industries. That investigation has included document preservation requests and subpoenas from Mr. Bonta's Office to PLASTICS.  For two years, in an attempt to avoid an unnecessary dispute, PLASTICS has cooperated with Mr. Bonta, providing him with a large volume of non-privileged and non-protected documents and also providing a privilege log, while preserving its many objections.

3.      Mr. Bonta has taken the position that he has unrestrained right to access privileged materials in PLASTICS' possession, from now until Mr. Bonta determines his investigation is over.  He has refused to honor any claim of privilege, including documents that are protected from disclosure under the First Amendment.  Indeed, on April 5, 2024, PLASTICS received a letter from Mr. Bonta demanding full production of every document contained on PLASTICS' privilege log — notwithstanding PLASTICS' claims of privilege — with a deadline of five business days, or else Mr. Bonta would serve PLASTICS with a petition to enforce the Investigative Subpoena.

4.       In sum, Mr. Bonta demanded that PLASTICS completely withdraw its assertion of a privilege for certain documents under the First Amendment. Mr. Bonta contends that, under California procedure, he is entitled to enforce his demand in California state court at any time,

even though Plaintiffs have no relevant contacts with California and have been afforded no explanation as to how they may have violated California law.

5.      PLASTICS has tried to resolve this dispute short of litigation, but Mr. Bonta has refused. The effect of Mr. Bonta's position has been an immediate and significant chilling of PLASTICS' ability to interact and communicate with its members, lawmakers, regulators, and others.  A petition to enforce the Investigative Subpoena would only exacerbate this chill. Mr. Bonta is also preventing PLASTICS from serving its public-policy mission.  PLASTICS' staff have chilled the disclosure of confidential information and public policy positions with each other and with others, based directly on the California Attorney General's demand that PLASTICS relinquish its privilege claims.

6.      Under the Fourth Amendment, it is "contrary to the first principles of justice to allow a search through [Plaintiff's] records, relevant or irrelevant, in the hope that something will turn up." *Fed. Trade Comm'n v. Am. Tobacco Co.*, 264 U.S. 298, 306 (1924) (Holmes, J.).  Bonta's investigation and demand are "premised solely upon *legal* activity" and he is thus engaged in "the very type of 'fishing expeditions'" that courts have long condemned as unlawful. *Major League Baseball v. Crist*, 331 F.3d 1177, 1187 (11th Cir. 2003) (suppressing civil investigative demand violating Fourth Amendment); *Media Matters v. Paxton*, No. 24-cv-147 (D.D.C. Apr. 12, 2024).

7.      PLASTICS therefore seeks declaratory and injunctive relief from this Court—in a jurisdiction where its constitutionally protected activities occur, where PLASTICS is incorporated and has its office, where most of PLASTICS employees live and work, and where PLASTICS will be uniquely injured by being compelled to disclose information—to protect its

and its membership's rights to association, petitioning, the freedom of the press, and the exercise of their free speech rights.

## JURISDICTION & VENUE

8.     Because Plaintiff's federal constitutional claims arise under the First, Fourth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988, this Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1332.  This Court also has subject matter jurisdiction under Article III because Plaintiff has suffered a concrete injury and, absent this Court's intervention, Plaintiff will continue to suffer injuries-in-fact.  There is a direct causal connection between Plaintiff's injuries, the chilling of associational activity and speech, and Mr. Bonta's actions.  An order granting Plaintiff protection will redress those injuries and stop any further chill.

9.     The parties are citizens of different states and the amount in controversy exceeds $75,000.

10.     This Court has authority to grant Plaintiff declaratory, injunctive, and other relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court also has supplemental jurisdiction over state law claims premised on common nuclei of operative fact(s). *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988).

11.     This dispute is ripe for adjudication.  Plaintiff's rights are presently being violated and Mr. Bonta is presently engaging in activity that conflicts with PLASTICS' exercise of its constitutional rights.  Plaintiff has already suffered injury directly consequent to Mr. Bonta's unlawful demand for privileged documents, and additional injury is currently occurring.  While the threat of the subpoena remains, absent relief from this Court, Plaintiff will suffer further

violations of its First Amendment rights and intrusions on its First Amendment privileges, which will cause significant and irreparable harm to PLASTICS and its members.

12.     This Court has personal jurisdiction over Mr. Bonta in his official capacity as Attorney General of the State of California.  The District of Columbia's long-arm statute is congruent with the permissible limits of personal jurisdiction under the Due Process Clause.  *See, e.g.*, *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020); *Mouzavires v. Baxter*, 434 A.2d 988, 993 (D.C. Cir. 1981).

13.     Personal jurisdiction exists where, as here, (1) the defendant has "purposefully directed" its activity at a resident of the forum and (2) the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Lewis v. Mutond*, 568 F. Supp. 3d 47, 52 (D.D.C. 2021) (first quoting *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 472–73 (1985), and then quoting *Bristol-Myers Squibb v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017)).  Even "a single act, so long as it creates [a] 'substantial connection,' is sufficient." *Heller v. Nicholas Appelgate Cap. Mgmt. LLC*, 498 F. Supp. 2d 100, 109–10 (D.D.C. 2007) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 475, n.18 (1984)).

14.     Personal jurisdiction "can be based upon: (1) intentional actions, (2) expressly aimed at the forum state, (3) causing harm, the brunt of which is suffered — and which the defendant knows is likely to be suffered — in the forum state." *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 29 (D.D.C. 2017) (quoting *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998)), *aff'd,* No. 17-7033, 2018 WL 4440459 (D.C. Cir. July 17, 2018); *see also Calder v. Jones*, 465 U.S. 783, 788–89 (1984).

15.     This Court has personal jurisdiction because Mr. Bonta's subpoena seeks documents from PLASTICS, a party located in the District of Columbia; PLASTICS conducted

a search of its internally located documents in the District of Columbia; and PLASTICS must review documents and respond to Mr. Bonta's demands from its offices here in the District of Columbia. *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 113 (D.D.C. 2018). Mr. Bonta "purposefully directed" his investigation activity at PLASTICS in the District of Columbia. Plaintiff's claims "arise" from contacts with Defendant in the District of Columbia because compliance by PLASTICS must occur in the District of Columbia.

16.    Venue is proper under 28 U.S.C. § 1391(b)(2) because all of the events giving rise to Plaintiff's claims occurred in the District of Columbia. Mr. Bonta caused his investigative subpoena to be served in the District of Columbia; PLASTICS can only comply or not comply with the subpoena while physically in the District of Columbia; and the irreparable harm to Plaintiff and its members, including the ongoing violation of their First Amendment rights, has been suffered in the District of Columbia.

## **PARTIES**

17.    PLASTICS is a member-driven, non-profit, trade association representing the entire plastics supply chain, located in the District of Columbia.

18.    PLASTICS' members include institutional and individual entities representing every component of the plastics supply chain including manufacturers.

19.    PLASTICS members may participate, directly or through committees, in discussions, verbal and written. These conversations are centered upon public policy; the development of local, state, and federal laws affecting the industry; and matters of public importance.

20.     PLASTICS' office is located in the District of Columbia. Its employees are located almost entirely in the District of Columbia or its greater area. Its meetings for its employees are held at its office in the District of Columbia. Many of its meetings for members are held in the District of Columbia.

21.     Defendant, Rob Bonta, is the Attorney General for the State of California. Plaintiff brings this action against Mr. Bonta in his official capacity as Attorney General. In that capacity, he has final policy-making authority over the activities that have led to this action.

22.     California Government Code section 11180 *et seq*. gives Mr. Bonta the ability to make investigations concerning violations of any law or rule or order of the department. California Government Code section 11180 also grants Mr. Bonta power to prosecute actions of violations of any law or rule or order of the department.

23.     Despite alleging in his preservation notice that the purpose of his investigation was to examine past *and ongoing* violations of law, Mr. Bonta's subpoena is solely focused on historical documents, the most recent of which is over thirty-five years old.

## FACTS

### A. Mr. Bonta's Office Has Demanded Unredacted Access to Privileged Documents – Including Documents Privileged Under the First Amendment

24.     PLASTICS incorporates by reference all facts asserted above.

25.     On April 28, 2022, Mr. Bonta sent to PLASTICS at its Washington, D.C. address a "Preservation Notice."  In that Preservation Notice, Mr. Bonta announced that his office had initiated an investigation into "past *and ongoing* violations of law in connection with the production and marketing of plastics and plastics recycling."

26.     On that same day, Mr. Bonta issued a press release announcing that he had commenced an investigation into the "fossil fuel and petrochemical industries for their role in

causing and exacerbating the global plastics pollution crisis." (Exhibit 1). Mr. Bonta alleged that he would examine whether and to what extent any "effort to deceive the public…may have violated the law."

27.    In that press release, Mr. Bonta specifically stated that his subpoena is premised on an allegation that, in the 1980s, "state legislatures and local governments began considering bills restricting or banning plastic products," and he asserts that "major fossil fuel and petrochemical companies" began a marketing campaign promoting recycling. Mr. Bonta's allegation appears to be that, in "internal documents," industry executives expressed "'serious doubt' that plastic recycling 'can ever be made viable on an economic basis.'"

28.    On July 27, 2022, Mr. Bonta issued a subpoena upon PLASTICS. PLASTICS did not accept the subpoena in the State of California; instead, Mr. Bonta sent it to PLASTICS in Washington, D.C., and PLASTICS received the document in Washington, D.C.

29.    Mr. Bonta's subpoena requested: "all documents and communications that were at any time housed at, on loan to, or in the possession of the Hagley Museum and Library, located in Wilmington, Delaware." This request was made without qualification of any kind based on timeframe or subject matter.

30.    Mr. Bonta also sought all documents entitled "Plastics Newsbriefs," "President's Report to the Members," or "State Bulletin," without qualification as to timeframe or subject matter.

31.    A "Plastics Newsbrief," "President's Report to the Members," or "State Bulletin," as well as any other newsletters, are documents that are protected from disclosure by the First Amendment because they reflect internal communications that summarize confidential data and information, and the information reflected in these documents was gathered pursuant to a

guarantee of confidentiality.  These and other documents are stored, subject to restrictions at the Hagley Library and Museum (Hagley) and are protected from disclosure as privileged internal communications between an Association and its members.   *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010); *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 479 (10th Cir. 2011).

32.    Corporate newsletters and commercial publications that print stories of "legitimate public interest" have also been held by courts to enjoy protection under the First Amendment's freedom of the press. *See Lovell v. City of Griffin*, 303 U.S. 444, 352 (1935) ("The liberty of the press is not confined to newspapers and periodicals . . .. The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion."); *see also Dickerson & Associates v. Dittmar* 34 P.3d 995 at 1004 (Colo. S. Ct. 2001) (same); *see also Matter of Photo Mktg. Ass'n Int'l*, 120 Mich. App. 527, 531, 327 N.W.2d 515, 517 (1982) (granting motion to quash a subpoena against a trade association).

33.    The documents also contain speech uttered by members and by the Association on matters of importance to the Association and matters relating to public policy.  Because some of the documents address matters of developing public policy, they also form part of PLASTICS' First Amendment right to petition.

34.    The privileged documents that Mr. Bonta seeks to access reflect speech, associational, press, and petitioning activities of PLASTICS' and its' members, which are privileged under the First Amendment. The documents reflect, among other things,

- the identities of individual members and leadership,

- lobbying strategy and activities of PLASTICS and/or its members,

- PLASTICS and/or its members' political or policy views and perspectives on proposed or recently enacted legislation, or proposed or recently promulgated regulations or ordinances,

- PLASTICS and/or its members' confidential discussions about matters of public policy.

35.    PLASTICS objected to Mr. Bonta's ability to exercise jurisdiction over PLASTICS and reserved the right to later assert additional objections.  It nonetheless agreed to cooperatively produce some non-privileged and non-protected documents subject to objections in an attempt to avoid an unnecessary dispute.

36.    On September 15, 2022, after conducting an internal search, PLASTICS provided responsive documents, subject to PLASTICS' objections both asserted and reserved.

37.    On September 20, 2022, Mr. Bonta's office informed PLASTICS that, in addition to internally located documents, Mr. Bonta believed that PLASTICS was also the custodian of documents located at the Hagley Library and Museum (Hagley) in Delaware.

38.    PLASTICS confirmed that there were in fact documents located at the Hagley designated as belonging to PLASTICS. PLASTICS promptly began reviewing documents located at the Hagley Museum.

39.    On May 19, 2023, PLASTICS sent Mr. Bonta's office its amended objections along with a second production of documents.

40.    On July 5, 2023, PLASTICS produced a third set of documents. These latter two productions were staggered at the request of Mr. Bonta's office so that it could receive documents on a rolling basis.

41.    These latter two productions were subject to objections asserted and reserved, as well as to claims of privilege, including privileges under the First Amendment. Among other objections, PLASTICS objected to the requests as overbroad, ambiguous, and not tailored to the scope of the stated purpose of the investigation. PLASTICS therefore proposed to image relevant

documents and, within that set, to identify privileged documents and to reserve the question of what privileges attach to irrelevant documents for a later date if it later became necessary.

42.     Mr. Bonta's staff agreed with this approach. As proof of this fact, at Mr. Bonta's office's request, on May 19, 2023, PLASTICS furnished Mr. Bonta with a categorical list of examples of irrelevant documents stored at the Hagley.

43.     At Mr. Bonta's office's request, on July 26, 2023, PLASTICS furnished Mr. Bonta with a privilege log.

44.     Mr. Bonta's office thanked PLASTICS for its cooperation and stated that it would reach back out to PLASTICS if it needed anything further.

45.     More than eight months later, and after no correspondence between the parties during that time, on April 5, 2024, Mr. Bonta's office issued a demand letter to PLASTICS, rejecting PLASTICS' assertion of a privilege under the First Amendment. Mr. Bonta stated that PLASTICS must unilaterally fully waive its First Amendment rights and accordingly produce those documents declared as privileged or Mr. Bonta would seek to enforce his purported subpoena.

**B. The Documents in Question Fall Squarely Under the First Amendment Privilege**

46.     Since its creation by members in 1937, PLASTICS has on its own behalf and on behalf of its members, participated in the public dialogue about plastics and the development of state, local, and federal public policies relating to plastics.

47.     PLASTICS does not publish or disclose its membership lists.

48.     Some members do not publish or otherwise publicly communicate their membership status in PLASTICS or the specific activities of PLASTICS with which they are involved.

49.    PLASTICS has communicated its public policy-related activities to its members through its internal, member-only newsletters.  In these communications, PLASTICS has shared recently promulgated regulations and what, in PLASTICS' estimate, members should consider; recently enacted statutes and local ordinances; pending or proposed ordinances, regulations, or bills; the industry's participation in matters of public discourse that affect the industry and which industry affects; and PLASTICS' position and development of its position with respect to those developments.

50.    PLASTICS has communicated its government petitioning activities through its internal, member-only newsletters. In these communications, PLASTICS has shared recently enacted statutes and local ordinances; pending or proposed ordinances, regulations, or bills; updates on conversations between PLASTICS' staff and legislators; and short- and long-term strategic considerations. To the extent that PLASTICS has shared information or opinion about pending ordinances, regulations, or statutes, such communication is a prerequisite, predicate step to the subsequent step where either PLASTICS or its members engage in active petitioning. As such, communication on these subjects is an inextricable part of the exercise of the freedom to associate and petition inasmuch as governmental efforts to frustrate the predicate communication would thereby effectuate a frustration of the act of petitioning.

51.    For more than 85 years, PLASTICS has engaged in communications with its members through newsletters and other media, the content of which is intended only for members, the substance of which identifies some members, and the subject matter of which largely concerns the development of or announcement of the association's position with respect to matters of public policy, developing laws, and engagement with the industry or public.  All of this has been transacted while the Association and its members believed that their activity was

entitled to the same confidentiality enjoyed by all political, civic, religious, or trade organizations and that it was protected by the First Amendment.

52.    Mr. Bonta's demand is plain: PLASTICS must relinquish its First Amendment rights and the rights of all of its current and former members, by producing all documents stored at the Hagley, without respect to whether those documents are privileged or have any bearing upon the stated purpose of Mr. Bonta's investigation.

**C. PLASTICS Has Not Waived its First Amendment Privilege with Respect to its Documents Currently Stored at the Hagley**

53.    PLASTICS signed a Memorandum of Agreement (Agreement) with Hagley on March 4, 1988, to deposit records for a twenty-year period for the purpose of facilitating *scholarly* research.

54.    This deposit was for a period of twenty years and was intended to remain in force for successive twenty-year periods unless terminated in accordance with the Agreement.

55.    This Agreement stated that the PLASTICS Collection remains the property of PLASTICS and its successors even though it was deposited at the Hagley.

56.    This Agreement detailed the limited conditions of who could access PLASTICS' documents at Hagley and for what purposes.

57.    The Agreement limited access to the documents to only PLASTICS employees and to those conducting scholarly research.

58.    The Agreement outlined specific requirements to meet, and procedures to follow, for researchers engaged in scholarship who wished to access PLASTICS' documents.

59.    Only records that were more than 25 years old were open to research.

60.    PLASTICS retained all copyrights and rights of publication.

61.     Because litigation, government, or private investigation is not scholarly research, pursuant to the internal access restrictions imposed by the Hagley, if someone wished to access PLASTICS' documents for the purposes of litigation, PLASTICS must be notified and approve or deny access to the documents.

62.     Members of the media are not engaged in scholarship, but rather in journalism, and therefore should not be permitted to view PLASTICS' documents at the Hagley.

63.     The purpose of the First Amendment privilege is to prevent the chilling effect on freedoms of speech, petitioning the government, and association that would ensue from the intrusions of government investigations specifically like the one Mr. Bonta is conducting.

64.     Associational privilege jurisprudence does not require proof of confidential treatment.  The associational privilege extends even to documents that are not confidential but are otherwise sensitive. *Commonwealth v. Carrasquillo*, 489 Mass. 107, 124 (2022) (holding that individuals can assert First Amendment privilege in furtherance of "conversational and associational" privacy interests over communications disclosed via social media; "although an individual's choice to share social media content with others diminishes the individual's privacy interests, it does not per se defeat them"); see also *Delaney v. Superior Ct.*, 50 Cal. 3d 785, 805 (1990) (considering analogous reporter's privilege and concluding that even non-confidential information may be shielded from disclosure to avoid a chilling effect on protected First Amendment activities); *People v. Parker*, 13 Cal. 5th 1, 33 (2022) (similar).

65.     In the D.C. Circuit, a party asserting the First Amendment privilege needs to demonstrate only "that it has a First Amendment interest at stake"—e.g., that disclosure of documents would have a "chilling effect" on conduct protected by the First Amendment. *In re Kincaid*, 2023 WL 5933341, at *5 n.5 (D.D.C. Aug. 9, 2023) (citing *Fed'n of Lab. & Cong. of*

*Indus. Organizations v. Fed. Election Comm'n*, 333 F.3d 168, 175–76 (D.C. Cir. 2003)); cf. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010) (holding that, to make prima facie showing that disclosure would chill associational rights, party need only "demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights...". Note, only the chilling effect is considered, and prior disclosure is not one of the elements evaluated by the court.  Nor is the privilege waived through limited, controlled disclosure.

### D.  Disclosure of the Documents in Question Would Exacerbate the Chilling Effect Currently Being Felt by PLASTICS

66.    PLASTICS staff have stated that the act of disclosure of privileged documents, will have an immediate and dramatic chilling effect on PLASTICS. To be sure, the current threat of the privileged documents' disclosure has already caused such an immediate chilling effect on PLASTICS' staff.

67.    Disclosure will subject PLASTICS and its members to a risk of litigation, political harassment, and other reprisals, for no reason other than their expression of viewpoints and participation in the associational and political process.

68.    Some PLASTICS staff have stopped engaging in open discourse— including the free and candid exchange of information and the formation and development of the Association's public policy positions — knowing that their private views and communications could be disclosed if a First Amendment privilege is not protected.

69.    PLASTICS relies on member participation to operate day-to-day and to achieve its fundamental purpose: to advance the common interest of members, share information, and advocate on legislative, regulatory, public policy, and other matters concerning plastics. The

chilling effect that will directly result from forced disclosure of privileged documents—and has resulted from the Demand's threat of such forced disclosure—compromises PLASTICS' ability to function effectively, harming its ability to achieve its intended mission.

70.     In addition, PLASTICS activity with respect to its right to petition under the First Amendment has been directly and proximately chilled because, as a consequence of Mr. Bonta's demands, PLASTICS faces greater difficulty in creating or maintaining records with respect to the development of public policy positions and faces an immediate reduction in the development of public policy positions, for fear that all such discussions will subsequently be made public.

71.     PLASTICS has limited full candid speech to its members, due to fear that the California Attorney General will demand unlimited access to such communications, as he is doing in the instant case.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of Plaintiff's Rights Under the First Amendment Including the Freedom of Association and the Fourteenth Amendment of the United States Constitution (42 U.S.C. § 1983) and Plaintiff's Liberty of Speech Rights Under Article I Section 2 of the California Constitution and Plaintiff's Right to Assemble and Petition under Article I Section 3 of the California Constitution**

72.     Plaintiffs incorporate all paragraphs set forth above and below as if set forth fully herein.

73.     Attorney General Bonta's issuance of the subpoena and subsequent demand for access to privileged documents violates Plaintiff's First Amendment rights and the rights of its current and former Members by demanding that PLASTICS turn over confidential and privileged materials, including those that involve the freedom of association between members and between the association and others.

74.    The Investigative Subpoena seeks all documents merely because they are currently or once were stored at the Hagley. The subpoena seeks newsletters without regard to whether the content relates at all to the Attorney General's "investigation." These documents are protected from compelled disclosure under the First Amendment. *E.g.*, *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021); *NAACP v. Alabama*, 357 U.S. 449, 462 (1958).

75.    Moreover, to the extent that any of these documents identifies any of the association's members, that identity is itself protected under the First Amendment from disclosure if such disclosure would have a chilling effect on the member's participation or on a potential future member's participation. *NAACP v. Alabama*, 357 U.S. 449, 462 (1958).

76.    The party asserting a First Amendment privilege has a light burden, "given the crucial place speech and associational rights occupy under our constitution." *Flynn v. Square one Distribution, Inc.*, No. 6:16-mc-25, 2016 WL 2997673, at *3 (M.D. Fla. May 25, 2016) (internal quotations and citing authority omitted). In contrast, courts apply "exacting scrutiny" to governmental demands that a party release materials protected by the associational privilege. *Ams. for Prosperity Found*, 141 S. Ct. at 2383; *Meta Platforms, Inc. v. D.C.*, 301 A.3d 740, 756 (D.C. 2023) ("[W]here compelled disclosures seriously implicate First Amendment interests, government subpoenas may face more exacting judicial scrutiny.").

77.    Compulsory disclosure of an association's membership lists "would work a significant interference with the freedom of association of their members." *NAACP*, 357 U.S., at 466; *Bates v. City of Little Rock*, 361 U.S. 516, 80 S. Ct. 412, 4 L. Ed. 2d 480 (1960).

78.    The First Amendment privilege protects against "the disclosure of the identity of members and the content of internal communications" between employees and members. *Dunnet Bay Constr. Co. v. Hannig*, 2011 WL 5417123, *3 (C.D. Ill. 2011); see *La Union Del Pueblo*

*Entero v. Abbott*, 2022 WL 17574079, at *9-10 (W.D. Tex. Dec. 9, 2022) (names of individual committee members); *Apple Inc. v. Match Group Inc.*, 2021 WL 3727067, at *8 (N.D. Cal. Aug. 19, 2021) (communications between coalition of app developers); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2018 WL 2441518, at *10 (N.D. Cal. May 31, 2018) (communications from donors).

79.     The associational privilege extends to documents reflecting members' lobbying strategy and activities, members' views on proposed legislation, and the political "views expressed, and ideas advocated" by members. *DeGregory v. Att'y Gen. of State of N.H.*, 383 U.S. 825, 828 (1966) ("the views expressed, and ideas advocated" at political party meetings); see *Ass'n of Equip. Manufacturers v. Burgum*, 427 F. Supp. 3d 1082, 1097¬1103 (D.N.D. 2019) ("documents that variously discuss or touch upon problems [and] whether legislative relief should be sought"); *Dole v. Service Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1459 (9th Cir. 1991) (minutes from union membership meetings).

80.     Courts across the country have held that the associational privilege protects the same categories of documents as are at issue here, including documents reflecting:

- the identities of members and leadership,

- "internal communications between trade association groups and their members regarding lobbying strategy and the implementation of legislation—even when only economic interests are at stake,"

- the association's "role in drafting and lobbying for" a state statute,

- the political "views expressed, and ideas advocated" by members, and

- internal campaign information.

81.     The Tenth Circuit, in *In re Motor Fuel Temperature Sales Practices*, "discussed at length its views regarding the scope of the First Amendment Privilege and appears clearly to have concluded it extends to internal communications between trade association groups and their

18

members regarding lobbying strategy and the implementation of legislation— even when only economic interests are at stake." *Ass'n of Equip. Manufacturers v. Burgum,* 427 F. Supp. 3d 1082 (D.N.D. 2019) (citing *In re Motor Fuel Temperature Sales Practices Litigation*, 641 F.3d 470, 481 (10th Cir. 2011).

82.    A court prohibited discovery into a farm-equipment dealers association's "role in drafting and lobbying for" a state statute. This principle applies directly to the instant case. *Ass'n of Equip. Mfrs. v. Burgum*, 427 F. Supp. 3d 1082, 1097-1103 (D.N.D. 2019); *All. of Auto. Mfrs., Inc. v. Jones*, 2013 WL 4838764, at *2-5 (N.D. Fla. Sept. 11, 2013) (prohibiting discovery into automobile dealers association's lobbying activities).

83.    In another instance, a court held that forcing the disclosure of internal campaign information "can have a deterrent effect on the free flow of information within campaigns" and "[c]ompelling disclosure of internal campaign communications can chill the exercise of these rights." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162-63 (9th Cir. 2010).

84.    Another court granted a motion to quash a subpoena because "discovery into a private citizen's lawful actions on a matter of public debate would clearly cause her and other individuals to be hesitant about becoming involved in the political process" and "protecting against such a chilling effect is one of the First Amendment's very purposes." *Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Twp.*, 2014 WL 10319321, at *5 (E.D. Mich. July 2, 2014).

85.    Courts have also held that it "is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *NAACP*, 357 U.S. at 462. Compelled disclosure of such associational materials must meet "exacting scrutiny." *Bonta*, 141 S. Ct. at 2383.

86.     The Investigative Subpoena further requires that PLASTICS surrender internal communications, policy developments and reporting, and newsletters, as well as other communications with members.  Such "[b]road and sweeping state inquiries into these protected areas . . . discourage citizens from exercising rights protected by the Constitution." *Baird v. State Bar of Ariz.*, 401 U.S. 1, 6 (1971) (plurality opinion).

87.     Since Mr. Bonta has demanded that PLASTICS either relinquish its claims of privilege under the First Amendment or face an enforcement petition in California courts, PLASTICS must either surrender constitutionally protected materials in violation of its First Amendment rights (and the rights of its former and current members) to comply with the subpoena, or risk subjecting itself to costly state-level proceedings in foreign courts that plainly lack jurisdiction over PLASTICS. Thus, the injury is direct, immediate, and ongoing.

88.     Mr. Bonta has demanded that PLASTICS produce documents protected by Article I Section 2 and Article I Section 3 of the California Constitution.

89.     These rights, afforded to PLASTICS under the California Constitution, are more robust than even PLASTICS' rights under the U.S. Constitution.  *L.A. All. For Survival v. City of L.A.*, 22 Cal. 4th 352, 366 (2000); *Robins v Pruneyard Shopping Ctr.*, 23 Cal.3d 899, 908 (1979).

## COUNT II

### Violation of Plaintiff's Rights Under the First Amendment Freedom of Speech and the Fourteenth Amendment of the United States Constitution (42 U.S.C. § 1983)

90.     Plaintiffs incorporate all paragraphs set forth above and below as if set forth fully herein.

91.     Attorney General Bonta's issuance of the subpoena violates Plaintiff's First Amendment rights and the rights of its current and former members with respect to the freedom

of speech by demanding that PLASTICS turn over confidential and privileged materials that involve prior speech uttered by staff and members. The freedom of speech protects against compelled speech by the government as much as the right to speak.  The right to speak with anonymity is also protected and is not a proper subject of governmental investigations.

## COUNT III

### Violation of Plaintiff's Rights Under the First Amendment Freedom to Petition the Government and the Fourteenth Amendment of the United States Constitution (42 U.S.C. § 1983)

92.    Plaintiffs incorporate all paragraphs set forth above and below as if set forth fully herein.

93.    Attorney General Bonta's issuance of the subpoena violates Plaintiff's First Amendment rights and the rights of its current and former members by demanding that PLASTICS turn over confidential and privileged materials, including those that are integral parts of the free exercise of the right to petition the government for redress of grievances. The Newsletters, for example, that the subpoena seeks are not published to the general public; instead, they are private communications between the association and its members regarding the lobbying and petitioning activities and strategies of the association on behalf of members on public policies of interest to the members. As such, the documents are at the heart of protected political speech and petitioning that the First Amendment protects from the government's prying eyes. They are quintessentially off limits to the government.

## COUNT IV

### Violation of Plaintiff's Rights Under the Fourth, and Fourteenth Amendments of the United States Constitution (42 U.S.C. § 1983)

94.    Plaintiffs incorporate all paragraphs set forth above and below as if set forth fully herein.

21

95.     The Fourth Amendment limits the scope of administrative subpoenas. *See Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208–11 (1946). The First Amendment provides Plaintiffs a privilege against disclosure of materials that would chill their constitutional rights. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2009). Where "the materials sought to be seized" by an administrative subpoena even "*may* be protected by the First Amendment," the requirements of the Fourth Amendment are applied with "scrupulous exactitude." *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978) (citing *Stanford v. Texas,* 379 U.S. 476, 485 (1965)) (emphasis added).

96.     On April 29, 2024, Mr. Bonta's office then informed PLASTICS that it intended to enter into the Hagley Museum and Library without PLASTICS' consent and examine the documents for itself without taking the intermediate measure of testing its position before an Article III court.

97.     Mr. Bonta's office claimed that the Hagley "invited" his staff to visit the Hagley and review PLASTICS's documents.

98.     In fact, three days earlier, on April 26, 2024, the Hagley informed Mr. Bonta's staff that this was incorrect, and that Mr. Bonta's office would first need to obtain *permission* from PLASTICS before the Hagley would permit access to PLASTICS' documents.

99.     Mr. Bonta's claim that, in the event that the parties dispute the applicability of a privilege, the California Attorney General may self-help to the documents without permission constitutes a seizure under the Fourth Amendment.

100.    Mr. Bonta's threat that his staff will trespass, help themselves to privileged documents, and omit to obtain prior permission, must be taken seriously. Accordingly,

PLASTICS will have to take additional measures, at substantial cost, to prevent unintended access to its privileged and confidential documents.

101.    This ongoing violation of PLASTICS' Fourth Amendment rights can only be remedied by this Court through prompt injunctive relief against further investigative pressure to release irrelevant, confidential, or privileged documents or other activity to enforcement of the subpoena.

102.    The guarantee of due process in the Fourteenth Amendment "recognizes and protects an individual liberty interest" from being subjected to legal process in a jurisdiction with which a person has no contact unless they willingly consent to such process. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask for the following relief:

A.    Declare that Mr. Bonta's Investigative Subpoena and investigation violates PLASTICS' and its current and former members' rights under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution, as well as Article I of the California Constitution.

B.    Temporarily enjoin Mr. Bonta, his officers, agents, servants, and employees from initiating any action to enforce their investigation or the Investigative Subpoena in violation of Plaintiff's constitutional rights.

C.    Permanently and preliminarily enjoin Mr. Bonta, his officers, agents, servants, and employees from initiating any action to enforce the Investigative Subpoena or further investigating Plaintiff in violation of their constitutional rights.

D.    Award Plaintiff its costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and any other applicable law.

E.    Grant Plaintiff any and all other relief as the Court deems just and proper.

Dated: May 24, 2024                          Respectfully submitted,


                                             */s/ Manesh K. Rath*_____

                                             **KELLER AND HECKMAN LLP**
                                             Manesh K. Rath (DC 457835)
                                             1001 G St. NW, Suite 500
                                             Washington, DC 20001
                                             T: (202) 434-4652
                                             Rath@khlaw.com
                                             *Counsel for Plaintiff PLASTICS Industry*
                                             *Association*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of May 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served via the CM/ECF system.

Dated: May 24, 2024

Respectfully submitted,

*/s/ Manesh K. Rath*_____

**KELLER AND HECKMAN LLP**
Manesh K. Rath (DC 457835)
1001 G St. NW, Suite 500
Washington, DC 20001
T: (202) 434-4652
Rath@khlaw.com
*Counsel for Plaintiff PLASTICS Industry Association*