**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| PLASTICS INDUSTRY ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 24-cv-1542 (APM) |
| ROB BONTA, *Attorney General of the State of California,* | ) ) ) ) | |
| Defendant. | ) ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

**I.**

Before the court is Plaintiff Plastics Industry Association's ("Plastics") Renewed Motion for Preliminary Injunction and Temporary Restraining Order against Defendant Rob Bonta, the Attorney General of California. *See* ECF No. 25 [hereinafter Renewed Mot.]. This is the second time that Plastics, a resident of the District of Columbia, has asked the court to enjoin enforcement of a subpoena issued by Bonta in connection with his investigation into potential misrepresentations about the viability of plastics recycling. On September 11, 2024, this court denied Plastics' initial Motion for Preliminary Injunction and Temporary Restraining Order on the grounds that Plastics had failed to show a substantial likelihood of success in establishing that Bonta is subject to personal jurisdiction in this court. *See* Mem. Op. & Order Denying Pl.'s Mot. for T.R.O. & Prelim. Inj., ECF No. 21 [hereinafter Mem. Op.]. Plastics then filed an amended complaint, *see* Am. Compl., ECF No. 22, and filed the instant motion on September 23, 2024.[1]

---

[1] The original opinion also denied on the same grounds a Motion for a Temporary Restraining Order and Preliminary Injunction filed by the American Chemistry Council ("ACC") in a related case. *See* Mem. Op. at 3. ACC, too,

Plastics largely renews its jurisdictional and merits arguments from its first motion. It has, however, revised them in three important respects. First, Plastics now explicitly alleges that, on April 28, 2022, months before issuing the subpoena, Bonta served a document "Preservation Notice" on Plastics in the District of Columbia via a hired process server. Second, Plastics asserts a new subsection of the D.C. long-arm statute, D.C. Code § 13-423(a)(4), as a basis for personal jurisdiction. Third, it has supplemented the record to establish the merits of its claims.

The court denies Plastics' renewed motion because it has not demonstrated a substantial likelihood of success in both establishing personal jurisdiction over Bonta and on the merits of its claims. As to personal jurisdiction, the court's reasoning for its denial of Plastics' initial motion continues to apply, the fact of personal service of the Preservation Notice does not change the result, and Plastics has not established jurisdiction under § 13-423(a)(4). On the merits, Plastics has not shown that it retains a First Amendment privilege in the subpoenaed records, which until recently were housed at the Hagley Library in Delaware. By making those records available to researchers and others without meaningful restrictions, Plastics has not preserved the privilege it now asserts.

## II.

To succeed on a motion for a preliminary injunction, Plastics must show that (1) it is "likely to succeed on the merits"; (2) it is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [its] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). As part of the first factor, Plastics must demonstrate a likelihood of success in establishing personal

---

amended its complaint and filed a Renewed Motion for Temporary Restraining Order and Preliminary Injunction but has since withdrawn it. *See* Withdrawal of Mot. for T.R.O. & Prelim. Inj., *American Chemistry Council v. Bonta*, No. 24-cv-1533 (APM) (D.D.C. Oct. 17, 2024), ECF No. 37. Accordingly, this opinion focuses solely on Plastics' motion.

jurisdiction over the defendant.  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C.

Cir. 2015).

**III.**

**A.**

Plastics' renewed motion focuses on the fact that Bonta hired a process server to personally

deliver the Preservation Notice on Plastics within the District of Columbia nearly three months

before issuing the subpoena.  *See* Renewed Mot., Mem. in Supp., ECF No. 25-1 [hereinafter

Renewed Mot. Mem.], at 14–15; Renewed Mot., Decl. of Matt Seaholm, ECF No. 25-2

[hereinafter Seaholm Decl.], ¶¶ 13–14 (asserting that Bonta served the Preservation Notice on

April 28, 2022, and that Plastics received the subpoena on July 27, 2022).[2]  The Preservation

Notice referenced Bonta's investigation of potential California law violations in connection with

the production and marketing of plastics and plastics recycling, and directed Plastics to preserve

certain categories of records relevant to the investigation  Seaholm Decl., Ex. 1, ECF No. 25-3, at

2–3.[3]  According to Plastics, Bonta's service of the Preservation Notice suffices to establish

jurisdiction under subsections (a)(1) and (a)(3) of the D.C. long-arm statute.  *See* Renewed Mot.

Mem. at 14–15; D.C. Code § 13-423(a)(1) (providing for jurisdiction over any person who

"transact[s] any business in the District of Columbia"); *id.* § (a)(3) (providing for jurisdiction over

any person who "caus[es] tortious injury in the District of Columbia by an act or omission in the

District of Columbia").

But Plastics overlooks an additional crucial element to long-arm jurisdiction under those

provisions: the plaintiff's suit must "aris[e] from" the jurisdiction-conferring contacts.  *See* D.C.

---

[2] Having summarized the pertinent background facts in its earlier decision, Mem. Op. at 6–8, the court assumes the reader's familiarity with those facts and does not repeat them here.

[3] Because the parties have collected and filed the exhibits attached to their declarations in a single .pdf file, page citations to exhibits are to the CM/ECF page number.

3

Code § 13-423(b) ("When jurisdiction over a person is based solely upon [one of the ways to establish jurisdiction in subsection a], only a claim for relief arising from acts enumerated in this section may be asserted against him"); *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1981) (noting that "District of Columbia courts have interpreted section 13-423(b) as a bar to claims unrelated to the acts forming the basis of personal jurisdiction" (citations omitted)); *see also World Wide Mins., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1168 (D.C. Cir. 2002) (jurisdiction under subsection (a)(1) "is limited to claims arising from the particular transaction of business in the District" (internal quotation marks and citation omitted)).

Plastics' suit does not "aris[e] from" the Preservation Notice.  Rather, as the amended complaint makes clear, it arises from "Bonta's issuance of the subpoena[.]"  Am. Compl. ¶ 72 (Count I) (alleging that "Bonta's issuance of the subpoena" violates Plastics' and its members' associational rights under the First Amendment); *id.* ¶ 90 (Count II) (alleging that Bonta's "issuance of the subpoena violates" Plastics' and its members' free speech rights under the First Amendment); *id.* ¶ 92 (Count III) (alleging that "Bonta's issuance of the subpoena violates" Plastics' right to petition under the First Amendment); *see also id.* ¶ 98 (Count IV) (alleging that Bonta's threat to seize documents without permission from the Hagley Library constitutes an unlawful "seizure under the Fourth Amendment").

In terms of its actual claims, Plastics acknowledges that "[t]he party asserting the privilege must first demonstrate a prima facie showing of arguable [F]irst [A]mendment infringement . . . by establishing a reasonable probability . . . that enforcement of the discovery requests will result in . . . consequences which objectively suggest an impact on, or *chilling* of, First Amendment rights."  *Id.* at 25 (quoting *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010), and *Buckley v. Valeo*, 424 U.S. 1, 74 (1976)) (internal citations, quotation marks, and alterations

omitted) (emphasis added).  Plastics' evidence does not make any showing that the *Preservation Notice* burdened its First Amendment rights, or continues to do so.

The declaration that Plastics presents from its CEO expressly ties the organization's and its members' claimed constitutional injuries to issuance of the subpoena.  *See* Seaholm Decl. ¶ 30 ("Responding to the subpoena by producing privileged documents would result in disclosure of statements by PLASTICS . . . ."), *id.* ¶ 38 ("[M]any members would have chosen not to speak or become involved in . . . PLASTICS if they had known that the California Attorney General would take the position that their internal privileged communications should be produced under its subpoena."); *id.* ¶ 44 ("The issuance of the California Attorney General subpoena . . . has chilled my ability to publish communications on behalf of PLASTICS regarding recycling."); *see also id.* ¶¶ 39–40, 42–43, 45–51.  So, too, does the anonymous declaration from one of Plastics' member-companies.  *See* Mot. to Seal Supporting Decl., ECF No. 26, Anonymous Decl., ECF No. 26-1, ¶ 4 ("Because of the California Attorney General's subpoena, the Company has modified how it is communicating concerning PLASTICS' and other associations' activities."); *id.* ¶ 8 ("If PLASTICS is forced to produce non-public documents in response to the subpoena . . . , the Company or its representatives will be less willing to communicate with PLASTICS and its associated members . . . ."); *see also id.* ¶¶ 7, 10–11.  Neither declaration describes any chilling effect arising out of the Preservation Notice whatsoever.  The fact that Bonta personally served the Preservation Notice in the District of Columbia through an agent therefore cannot form the basis of exercising long-arm jurisdiction over him.

Plastics counters that because the Preservation Notice was a precursor to the subpoena, its personal service is a relevant contact from which its suit arises.  It argues that the "Document Preservation Letter—which announced the investigation of PLASTICS and initiated the chilling

of PLASTICS' First Amendment rights—is plainly related to the subpoena, which is a central part of the very same investigation against PLASTICS and also concerns the disputed documents at issue here."  Pl.'s Reply in Supp. of Pl.'s Renewed Mot., ECF No. 31, at 7.  The D.C. Circuit, however, has emphasized that jurisdiction under § 13-423(a)(1) "is limited to claims arising from the *particular transaction* of business in the District."  *World Wide Mins.*, 296 F.3d at 1168 (emphasis added) (internal quotation marks and citation omitted); *accord Li v. Li*, No. 23-7052, 2024 WL 4601521, at *2 (D.C. Cir. Oct. 29, 2024) (quoting *World Wide Mins.*).  And, contrary to what it says in its reply brief, Plastics has failed altogether to present *any* evidence that the Preservation Notice "initiated" any chilling effect on its or its members' exercise of constitutional rights.  That Bonta followed the Preservation Notice with a subpoena that, according to Plastics, did have the requisite chilling effect does not transform service of the Preservation Notice into a relevant in-forum contact.

The court has previously determined that Bonta's mailing of the subpoena to Plastics' D.C.-based counsel and subsequent communications with counsel about compliance, productions, and objections were insufficient to establish personal jurisdiction.  *See* Mem. Op. at 13–20.  Nothing in the renewed motion warrants revisiting that conclusion.  Nor do the new allegations as to Bonta's post-filing conduct.[4]  Bonta attempted to personally serve Plastics with process as to an enforcement action he filed in California state court but failed in that effort, and Plastics ultimately accepted service by email.  Seaholm Decl. ¶ 33.  Plastics' claims do not arise out of Bonta's failed attempt at in-person service, and its acceptance of process by email is not a meaningful

---

[4] In its previous memorandum opinion, the court had left open whether Plastics and ACC could amend their complaints to include Bonta's post-filing conduct for purposes of assessing personal jurisdiction.  Mem. Op. at 20–21.  Plastics argues that personal jurisdiction must be assessed as of the filing of the amended complaint, not at the time of suit. *See* Renewed Mot. Mem. at 19 (citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007)).  The court has not decided this issue.  Instead, it has assumed that it can consider post-filing contacts, but Plastics still falls short of establishing personal jurisdiction over Bonta.

jurisdictional contact with the District.  Accordingly, the court cannot find that Plastics has demonstrated a likelihood of success in establishing personal jurisdiction over Bonta under subsections (a)(1) or (a)(3) of D.C.'s long-arm statute.

**B.**

Plastics also asserts that jurisdiction is proper under subsection (a)(4) of the D.C. long-arm statute.  *See* Renewed Mot. Mem. at 20–21.  Under that subsection, jurisdiction may lie against non-resident defendants who "caus[e] tortious injury in the District of Columbia by an act or omission outside of the District of Columbia if [they] . . . engage[] in any other persistent course of conduct . . . in the District of Columbia."  D.C. Code § 13-423(a)(4).  This provision does "not occupy all of the constitutionally available space" and "require[es] a plus factor," meaning there must be "some other reasonable connection between the state and the defendant separate from and in addition to the in-state injury" for jurisdiction to attach.  *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987) (internal quotation marks and citation omitted).

Plastics asserts that "Bonta's contacts with the District far exceed th[e] modest showing required" under subsection (a)(4).  Renewed Mot. Mem. at 21.  The court disagrees.  Plastics only directs the court's attention to Bonta's public-facing Instagram page, which makes no obvious reference to him in the District, and webpages that reference, in passing, (1) Bonta signing onto an amicus brief that was filed in the D.C. Circuit, (2) his potential receipt of an award in the District, and (3) a one-day trip to the District for an event promoting Asian Americans and Pacific Islanders, *id.* at 21 n.5.  These scant contacts fall well short of those required to show a persistent course of conduct in the District of Columba for purposes of § 13-423(a)(4).  *Compare Doe v. Roman Cath. Diocese of Greensburg*, 581 F. Supp. 3d 176, 194–95 (D.D.C. 2022) (persistent course of conduct where the defendant participated in an annual "pilgrimage" trip to Washington, D.C. in addition

to several other trips to D.C.), *with Dean v. Walker*, 756 F. Supp. 2d 100, 103–04 (D.D.C. 2010) (no persistent course of conduct where the defendant had a four-day trip with his family to Washington, D.C. and separately attended two conferences on behalf of his employer).

**IV.**

Even if the court could exercise jurisdiction over Bonta, Plastics has not established a likelihood of success on the merits of its claims. *See Winter*, 555 U.S. at 20. Specifically, Plastics has failed to demonstrate that it or its members have a protected First Amendment interest in the disputed documents. The present record establishes that Plastics has neither formally nor as a matter of practice sufficiently shielded the records from public access so as to preserve the claimed First Amendment interest.

Until recently, Plastics has maintained the disputed records pursuant to a Memorandum of Understanding ("MOU"), signed in 1988, at the Hagley Library and Museum ("Hagley") in Delaware. *See* Seaholm Decl. ¶ 18; *id.*, Ex. 12, ECF No. 25-3 [hereinafter MOU], at 82–83. According to the MOU, Plastics' purpose in depositing records at Hagley was "to facilitate the use of records for scholarly purposes." MOU at 82. The public's access to the records was mostly unfettered. The MOU provides that:

- Records older than 25 years were "open to research," but records younger than 25 years would be reviewed by Plastics so it could determine access provisions;

- Researchers could photocopy materials if, in Hagley's determination, the documents could physically withstand copying;

- Researchers could quote briefly for the purpose of scholarly analysis, but extensive quoting required the prior consent of Plastics.

*See id.*    The only other restriction on access was imposed by Hagley itself—that "[v]isitors involved in research for current or potential litigation must contact the library in advance to obtain permission to access."    *See* Seaholm Decl., Ex. 3, ECF No. 25-3, at 18; *see also id.*, Ex. 4, ECF No. 25-3, at 20.    Plastics has identified no other condition on access or use.    Therefore, for decades, the records at issue were generally available to the public.

Nor did Plastics keep tight control over the records in practice.    As an initial matter, because the documents over which Plastics asserts privilege are dated 1990 or earlier, they are "open to research" under the MOU.    *See* Def.'s Opp'n to Mot. for Prelim. Inj. & T.R.O., ECF No. 15, Decl. of Katherine Schoon, ECF No. 15-1 [hereinafter Schoon Decl.], Ex. B, at 8–21 (Plastics' privilege log).[5]    In an email to Bonta's office, Hagley's Director of Library Services, Dr. Erik Rau, explained that the "25-year embargo on materials . . . no longer applie[d]" to documents in the collection, meaning that they were fully open to research under the MOU.    *See* Schoon Decl., Ex C at 27; *see also* Seaholm Decl., Ex. 8, ECF No. 25-3, at 60 (notation on Hagley's website indicating "[n]o restrictions on use" for the Plastics' collection).    Further, Plastics has not rebutted Bonta's proof that someone has copied some of Plastics' records stored at Hagley and has made them available on a publicly accessible website.    *See* Schoon Decl. ¶¶ 7–8 (referencing documents available on toxicdocs.org).    And though Plastics asserts that access to the collection is limited solely to researchers, the record before this court is that at least one journalist had broad access to the collection and released a story unfavorable to Plastics' viewpoint.    *Compare* Seaholm Decl. ¶ 28 ("It is PLASTICS' understanding that members of the media are not engaged in scholarship, but rather in journalism, and therefore should not have been permitted to view PLASTICS' documents at the Hagley."), *with* Schoon Decl. ¶ 9 (discussing NPR's story entitled "Wasteland," in which

---

[5] Bonta has incorporated by reference the merits arguments he made in response to the first motion for injunctive relief.  Def.'s Opp'n to Renewed Mot. for T.R.O. & Prelim Inj., ECF No. 29, at 3 n.1.

one of its reporters went to Hagley and viewed the Plastics' collection); *id.*, Ex. D at 33–46 (transcript of the story). This undermines Plastics' assertion that the access restrictions were sufficient to keep its documents out of unfriendly hands. *See* Renewed Mot. Mem. at 29. Finally, the record shows that at least 19 members of the public accessed Plastics' collection between 2018 and 2023. Schoon Decl. ¶ 6(e); *id.*, Ex. E at 27. Plastics has not offered any evidence that it limited access or the records' use to any of those 19 visitors.

Notwithstanding the public availability of the contested records, Plastics argues that making them accessible for scholarly research at Hagley was not inconsistent with preserving its claimed First Amendment interests. *See* Renewed Mot. Mem. at 28–32. It looks to "closely analogous privileges," and cites cases holding that a limited disclosure of privileged materials does not necessarily result in waiver. *Id.* at 30–32.

But none of those cases help Plastics. In *Rockwell International Corp. v. U.S. Department of Justice*, the D.C. Circuit held that the Department of Justice's limited disclosure of an internal report had not waived any applicable privileges where "the Justice Department gave the documents to [a congressional] Subcommittee only after the Subcommittee expressly agreed not to make them public." 235 F.3d 598, 604 (D.C. Cir. 2001); *see also United States v. Deloitte LLP*, 610 F.3d 129, 142 (D.C. Cir. 2010) (no waiver of attorney work-product privilege where agreement allowed Deloitte to disclose certain documents only with its client's "specific consent"). Here, of course, the opposite is true: Plastics handed over records to Hagley without a comparably stringent restriction on public access. Neither can an "expectation of confidentiality . . . be assumed" based on the nature of the documents at issue. *Murphy v. Dep't of Army*, 613 F.2d 1151, 1159 (D.C. Cir. 1979). The express terms of the MOU made the collection presumptively available, with only limited restrictions on access and use. *See* MOU at 82–83. Indeed, the public-facing Hagley

10

website stated that there were "no restriction[s] on use" of the collection.  Seaholm Decl., Ex. 8, ECF No. 25-3, at 60.

The other privileges discussed do not map neatly on to this case.  The bank examination privilege grows out of the "more or less continuous . . . flow of communication between [a] bank and [its] regulatory agency."  *In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Rsrv. Sys.*, 967 F.2d 630, 634 (D.C. Cir. 1992).  There plainly is no similar relationship at issue here.  Moreover, there are no "shared common interests" that would permit a limited disclosure as in attorney work-product cases.  *United States v. AT&T*, 642 F.2d 1285, 1300 (D.C. Cir. 1980).

Plastics also asserts that its First Amendment interests are heightened here because a political adversary is seeking privileged materials.  *See* Renewed Mot. Mem. at 26–27.  It points out, for instance, that Hagley's policy was not to allow research for litigation purposes without Plastics' prior consent.  Seaholm Decl. ¶ 27.  Even accepting Plastics' premise, Plastics cites to no case in which a court has recognized a First Amendment privilege in records that the privilege holder generally made available to the public.  Its lax access rules were "inconsistent with the maintenance of secrecy from the disclosing party's adversary."  *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d at 605 (work-product privilege) (internal quotation marks and citation omitted).  By way of example, a journalist was given access to records at Hagley.  She used the records she reviewed to develop a story about what she termed the "great plastic lie," that is, the plastic industry's alleged creation of the public's erroneous perceptions about plastics recycling.  Schoon Decl., Ex. D, at 33–46 (transcript of NPR's publication of "Wasteland").  That is the very subject of Bonta's investigation.  On the present record, the court cannot find that Plastics adequately preserved the confidentiality of the contested records.

Finally, since filing this suit, Plastics has retrieved the collection from Hagley.  Seaholm Decl. ¶ 35.  But this recall comes too late, as Plastics' decades-long allowance of public access to the records is at odds with its assertion of privilege.  *Cf. Perry*, 591 F.3d at 1165 n.12 (noting that the associational privilege at issue was "limited to communications among the core group of persons engaged in the formulation of campaign strategy and messages" and "certainly does not apply to documents or messages conveyed to the electorate at large" (emphasis omitted)).

In sum, the court cannot find that Plastics has established a likelihood of success on the merits of its First Amendment claims.

## V.

Accordingly, Plastics' Renewed Motion for a Preliminary Injunction and Temporary Restraining Order, ECF No. 25, is denied.  Plastics' Motion to Partially Seal Supporting Declaration, ECF No. 26, is granted.  To be clear, nothing in this Memorandum Opinion should be read to pass on the scope of Bonta's subpoena to Plastics or whether the subpoena actually seeks records relevant to his investigation.  The court only holds that, based on a likelihood-of-success standard, Plastics has not established personal jurisdiction over Bonta in this court or the merits of its claims that rest on First Amendment rights and privileges.

Dated:  November 6, 2024

_____
Amit P. Mehta
United States District Court Judge

12